IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LARRY ALLEN SLEDGE, | ) |
| Plaintiff | ) Case No. 1:20-cv-00336 (Erie) |
| vs. | ) |
| | ) HON. RICHARD A. LANZILLO |
| ERIE COUNTY PRISON, WARDEN | ) UNITED STATES MAGISTRATE JUDGE |
| KEVIN SUTTER, DEPUTY WARDEN | ) |
| MICHAEL HOLMAN, CAPTAIN | ) |
| MITCH CARMEN, CAPTIN SHAWN | ) MEMORANDUM OPINION ON |
| BOLT, CORRECTIONAL OFFICER | ) DEFENDANTS' MOTION TO DISMISS |
| HILL, and CORRECTIONAL OFICER | ) |
| BARRETT, | ) ECF NO. 20 |
| Defendants | ) |

**MEMORANDUM OPINION**

Presently pending before the Court is the Defendants' Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 20. For the reasons that follow, the motion will be **GRANTED**.[1] Because the Plaintiff may be able to cure certain of the pleading deficiencies identified in this Opinion, his claims against the individual Defendants will be dismissed without prejudice and with leave to file a Second Amended Complaint.

1.  Introduction

Plaintiff Larry Allen Sledge ("Sledge") commenced this civil rights action pursuant to 42 U.S.C. § 1983 against the Erie County Prison, Warden Sutter, Deputy Warden Holman, Captain Carmen, Captain, Bolt, and Correctional Officers Hill and Barrett (collectively, "Defendants"), alleging violation of his rights under the Eighth and Fourteenth Amendments. *See, generally*, ECF

---

[1] The Parties have consented to the jurisdiction of a United States Magistrate Judge in these proceedings pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1). *See* ECF Nos. 3, 27.

1

No. 5.[2] The Defendants filed the instant motion to dismiss on May 12, 2021. Sledge filed a response in opposition on May 26, 2021. The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343(a). The Parties have consented to the jurisdiction of a United States Magistrate Judge in these proceedings pursuant with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1). The Defendants' motion is briefed and ready for disposition. *See* ECF Nos. 3, 27.

2.   Standards of Decision

Defendants filed their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) but because it challenges, in part, the Court's jurisdiction, the Court construes it as also moving for dismissal under Fed. Civ. P. 12(b)(1). *See* ECF No. 20, p. 1. Generally, Rule 12(b)(1) motions fall into two categories: facial attacks and factual attacks. *Davis v. Wells Fargo*, 824 F.3d 333, 336 (3d Cir. 2016). "[A] facial attack 'contests the sufficiency of the pleadings,' ... 'whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with jurisdictional prerequisites." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (quoting *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012); *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)). In evaluating a facial attack, a court must "apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6)," *Aichele*, 757 F.3d at 358, and consider "only ... the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff," *In re Schering Plough Corp.*, 678 F.3d at 243 (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). To the extent the Defendants move for dismissal based on Sledge's lack of constitutional standing, their motion is best construed as a facial attack on the Court's jurisdiction. So, in considering the question of standing, the Court "accept[s] [Sledge's] well-pleaded factual

---

[2] Sledge commenced this case by filing a motion for *in forma pauperis* status along with a form Complaint attached to his motion. *See* ECF No. 1-1. Before the Court ruled on his motion, he filed an Amended Complaint. *See* ECF No. 5. The Court granted Sledge's motion and ordered service of the Amended Complaint. ECF No. 7. The Amended Complaint is the operative pleading in this matter.

allegations as true and draw[s] all reasonable inferences from those allegations in his favor." *In re Horizon Healthcare Servs. Inc., Data Breach Litigation*, 846 F.3d 625, 633 (3d Cir. 2017).

This is the same standard the Court will utilize should it reach the question of the sufficiency of Sledge's claims, as pleaded. *See Aichele*, 757 F.3d at 358 (applying the same standard in evaluating a facial attack and a motion brought under Rule 12(b)(6)). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether a plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555. *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir.

2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Court of Appeals for the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Finally, because Sledge is representing himself, the allegations in the Second Amended Complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972).  If the court can reasonably read a pro se litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements.  *See Boag*, 454 U.S. at 354; *United States ex rel. Montgomery v. Bierley*, 141 F.2d at 555.

With these standards in mind, the Court now turns to its analysis and discussion of each motion.

3. Analysis and Discussion

   3.1  Allegations of the Amended Complaint

According to the Amended Complaint, on November 5, 2020, Sledge was placed in the Restricted Housing Unit ("RHU") at the Erie County Prison by Defendants Bolt, Carmen, Hill, and Barrett. ECF No., 5, ¶ 9. Sledge was put in a cell with an inmate "who was not medically cleared of

4

his Covid-19 14-day quarantine period." *Id.* Before being placed in that cell, Sledge expressed concerns "about going into the cell with this inmate" but was nonetheless placed there by Defendant Carmen. *Id.* Later that day, other prison officials told Sledge that he was put there by mistake and he then had to be placed on quarantine status "until [he] was tested for Covid-19." *Id.* On November 11, 2020, Sledge began complaining of "chest pains and breathing trouble … prior to being tested for Covid-19." *Id.* He was prescribed "breathing treatments" by prison medical personnel and then, on November 17, 2020, was taken to a local hospital. *Id.*

        3.2       Any claims against the Erie County Prison will be dismissed.

At the outset, and as previously explained in other litigation brought by Sledge, any claims against the "Erie County Prison" must be dismissed because a prison is not a "person" subject to suit under § 1983. *See Sledge v. Erie Cty. Prison*, 2021 WL 2073798, at *4 (W.D. Pa. May 24, 2021). "In the Third Circuit, it is well-settled that a prison or correctional facility is not a 'person' that is subject to suit under federal civil rights laws." *Regan v. Upper Darby Twp.*, 2009 WL 650384 (E.D. Pa. 2009), *aff'd* 363 Fed. Appx. 917 (3d Cir. 2010) (listing cases). Accordingly, Sledge's claims against the prison will be dismissed, with prejudice. *See, e.g., Lenhart v. Pennsylvania*, 528 Fed. Appx. 111, 114 (3d Cir. 2013) (concluding that district court properly dismissed claims against county prison because even though "[a] local governmental agency may be a 'person' for purposes of § 1983 liability, [the county prison] is not a person capable of being sued within the meaning of § 1983") (internal citations omitted); *Mincy v. Deparlos*, 497 Fed. Appx. 234, 239 (3d Cir. 2012) (per curiam) (county prison is not "person" within meaning of § 1983); *Scutella v. Erie Cty. Prison*, 2020 WL 4904587, at *6 (W.D. Pa. Aug. 20, 2020) (same).

        3.3       Sledge's Eighth Amendment Claims against the remaining Defendants will be dismissed for a lack of constitutional standing.

Sledge's Amended Complaint sets out two distinct claims: a deliberate indifference to medical needs claim against all Defendants under the Eighth and Fourteenth Amendments, and a

5

failure to train claim under the Fourteenth Amendment solely against Defendant Sutter. ECF No. 5, ¶¶ 12-13. A liberal reading of the Amended Complaint also reveals a conditions of confinement claim alleged under the Eighth Amendment. *See, id.*, ¶ 9 ("I was placed in a cell with … an inmate who was not medically cleared" from Covid quarantine.). Before turning to these particular claims, however, the Court must address Defendants' argument that the allegations of the Amended Complaint do not support Sledge's constitutional standing to bring these claims.

        3.3.1    Sledge has not pleaded an injury in fact and thus lacks constitutional standing to advance his claims.

The Defendants argue that Sledge's Amended Complaint must be dismissed because he has failed to allege the requisite injury. *See* ECF No. 22, p. 5. The Court agrees. For a plaintiff to establish Article III standing, he must suffer an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 149 (2010)). These requirements originate from separation-of-powers principles and "serve[ ] to prevent the judicial process from being used to usurp the powers of the political branches." *Id.* at 408 (citation omitted). The standing doctrine also serves several other "implicit policies embodied in Article III," including the assurance that "the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 472 (1982) (quoting *Flast v. Cohen,* 392 U.S. 83, 96 (1968)). In sum, the Court must ensure that Sledge has a "personal stake in the outcome of the controversy." *Warth v. Seldin,* 422 U.S. 490, 498 (1975) (internal quotation marks omitted).

The Supreme Court has been clear that an injury, to be cognizable, must not be "too speculative." *Clapper,* 568 U.S. at 409. Rather, the injury must be "certainly impending." *Id.*

6

(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 565 n.2 (1992)) (emphasis in original).

"[A]llegations of possible future injury" are not sufficient. *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphasis in original).

Sledge's Amended Complaint alleges as follows:

> On November 05, 2020, I Larry Allen Sledge, was escorted to the "RHU Dept" by Captain Shawn Bolt, Captain Mitch Carman, and Correctional Officers Joshua Hill and Peter Barnett. I was then placed in a cell with Johnathan Klaes, an inmate who was not medially cleared of his Covid-19 14 day quarantine period. Prior to going into the cell, I explained concerns about going into the cell with this inmate, however, I was still forced into this cell by Captain Mitch Carman. On November 17, 2020, I was sent to Saint Vincent Health Center for chest pains and breathing trouble which started on November 11th, 2020 prior to being tested for these Covid 19 issues. I was then prescribed breathing treatments on November 11th 2020 by Wexford Health Services located in the Erie County Prison. In response to Grievance No. 3638, Deputy Warden Michael Holman stated, "This was a mistake by staff, not intentional," but I received a misconduct report for requesting money as an informal resolution for this mistake on 11/10/20. Grievance No. 3638was denied by Michael Holman, Deputy Warden and Grievance Appeal No. 3653 was denied by Warden Devin Sutter based on Deputy Warden Michael Holman's response. (Note: Mr. Holman's response was admission of guilt to this allegation in grieving no. 3638.) This issue is based on the institution failing to take the appropriate measures to protect me from serious injury and/or death from the Covid-19 pandemic, and is in violation of the 8th Amendment of the US Constitution for the actions displayed in this issue described in this alleged complaint. Grievances 3638 + 3653 are Exhibits A+B also attached to this amended complaint, showing as proof that the allegations listed took place on 11/05/20.

ECF No., 5, ¶ 9.

Missing here is any allegation of actual injury attributed to Defendants' placing of Sledge in the cell with Klaes. Sledge alleges that he experienced chest pains and breathing trouble beginning on November 11, 2017 and was sent to the hospital for these conditions on November 17, 2017. *Id.* But he does not allege that either of these symptoms were caused by his brief exposure to inmate Klaes or that Klaes had a COVID-19 infection or any other infectious disease while the two were placed in the same cell. Instead, Sledge pleads only his "concerns" about being put in a cell with

another inmate who had yet to complete his mandatory quarantine period and his fear of "contracting COVID-19." *Id.* These allegations do not support a plausible inference that Sledge sustained an injury sufficient to support constitutional standing. *See, e.g., Purdy v. Community Corrections*, 2021 WL 2778565, at *3 (D. Neb. July 2, 2021) (holding that prison inmate failed to plead injury with respect to the allege risk of COVID-19 infection); *Cage v. Nwozo*, 2017 WL 6815023, at *2 (M.D. Tenn. Oct. 26, 2017) (inmate lacked standing to assert claims based on prison officials' release of another inmate into the prison population despite the inmate having tested positive for shingles where the plaintiff did not claim to have been infected with the shingles virus himself or that he never experienced chickenpox before, making him susceptible to the shingles virus).

The Amended Complaint does not allege that Klaes had a COVID-19 infection or other transmittable disease on November 5, 2017, that he exposed or transmitted illness to Sledge on that date, or that Sledge's chest pains and breathing issues were caused by this exposure. Thus, Sledge alleges none of the predicate facts upon which to plausibly infer that his placement in the cell with Klaes caused him to suffer any injury. Article III's injury-in-fact requirement for standing requires that the complaint support causation between the alleged wrong and the claimed injury. *See Finkelman v. NFL*, 810 F.3d 187, 193 (3d Cir. 2016). This causation requirement is "akin to 'but for' causation in tort and may be satisfied even where the conduct in question might not [be] a proximate cause of the harm." *Id.* (citation omitted). An "indirect causal relationship will suffice," provided there is a "fairly traceable connection between the alleged injury-in-fact and the alleged conduct of the defendant." *Id.* at 193-194. Here, any causal connection between Sledge's symptom and his placement in a cell with Klaes is purely speculative and unsupported by the facts alleged in the Amended Complaint. Alleging that Klaes had not finished his 14-day quarantine period is not the equivalent of alleging that he had COVID-19 or carried the coronavirus. Absent an allegation that Klaes had COVID-19 or some other infectious disease, it cannot be inferred that he exposed

8

Sledge to illness or that Sledge's complaints of chest pains or breathing difficulty were the result of the encounter with Klaes on November 5, 2017. Thus, he has not plausibly alleged that his placement in a cell with Klaes exposed him to disease or that this placement caused his chest pains, breathing difficulty, or any other physical injury or manifestation.

Furthermore, Sledge does not allege facts to support that he faces an ongoing risk to his health as a basis to support constitutional standing. Instead, he has alleged a single encounter with an inmate who had not completed a mandatory quarantine period and, therefore, might have had a coronavirus infection. The risk concerning which he expressed concern on November 5, 2017 has long since passed. He is not seeking equitable or other prospective relief based on ongoing conditions within the prison. If he were, he would not have to plead that he had been exposed to or contracted the disease to demonstrate an injury for purposes of standing. *See, e.g., Ousman D. v. Decker*, 2020 WL 1847704, at *5 (D.N.J. Apr. 13, 2020) (petitioner seeking habeas relief and release from detention based on ongoing threat of infection within detention facility need not show that he has COVID-19 to establish standing). *See also Helling v. McKinley*, 509 U.S. 25, 33, (1993) (holding that as to second-hand smoke, prisoner officials may not "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year."). Where equitable or other prospective relief is sought based on existing prison conditions, it is often enough to plead a genuine risk of exposure to disease or other dangerous conditions to support standing. *Id.* This principle does not apply to the facts Sledge has alleged in this case because the risk he feared has passed and he has not alleged any nonspeculative future harm. *See Liberian Cmty. Ass'n of Connecticut v. Lamont*, 970 F.3d 174, 184 (2d Cir. 2020) (residents who were quarantined by the state officials when they returned from West Africa during Ebola virus outbreak failed to plead sufficient likelihood that, under state's revised policy, any of them faced substantial risk of suffering

9

future injury, and thus they lacked standing to seek prospective injunctive relief to avert allegedly unconstitutional future quarantines).

It is possible that Sledge is claiming an injury-in-fact based on the fear of contracting COVID-19 he experienced when he was placed in the cell with Klaes: "I was then placed in a cell with Jonathan Klaes, an inmate who was not medically cleared of his Covid-19 14-day quarantine period ... I explained concerns about going into the cell with this inmate." ECF No. 5, ¶ 9. Fear of future harm constitutes an injury sufficient to support standing only if it arises from a threatened injury that is imminent and "'certainly impending.'" *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155, 158 (1990) (explaining that the imminence requirement "ensures that courts do not entertain suits based on speculative or hypothetical harms")). The "injury in fact" must have been "concrete and particularized" as well as "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quotation marks and citations omitted). Sledge has alleged nothing akin to an impending injury. Based on the allegations of his Amended Complaint, the injury he feared was speculative and hypothetical. His fear was based on his concern that Klaes might carry the coronavirus and his apprehension that he might experience a future illness. Nothing about the situation or risk Sledge faced on November 5, 2017 can be considered imminent for purposes of Article III standing. *See, e.g., Donald J. Trump for President, Inc. v. Way*, 2020 WL 6204477, at *7 (D.N.J. Oct. 22, 2020).

Sledge's purported injury is somewhat analogous to the injuries claimed by inmates in cases involving exposure to second-hand smoke, hepatitis, and asbestos. In *Robinson v. Vaugh*, for example, an inmate alleged constitutional standing based on his exposure to asbestos and his "constant fear of contracting an asbestos-related disease." 1992 WL 368461, at *2 (E.D. Pa. Dec. 2, 1992). The Court determined the inmate lacked standing because mere exposure, "absent some manifestation of an asbestos-related disease," rendered his purported injury "too speculative." *Id.*

10

Here, Sledge does not plead he was exposed to the coronavirus. Instead, he alleges he was placed in a cell with an inmate who had not finished his 14-day quarantine. The Amended Complaint does not disclose the reason Klaes was quarantined. It does not allege that Klaes was quarantined because he had contracted COVID-19, or because he had been in proximity to another inmate who tested positive for the coronavirus, or because he had recently been placed in or transferred to the prison, or any other explanation for the quarantine. The facts alleged in the Amended Complaint allow for only speculation regarding the origin, nature, and extent of the risk of harm Sledge feared after being temporarily celled with Klaes.

Nor does the allegation that Sledge had to endure his own period of quarantine, standing alone, satisfy the injury-in-fact requirement of constitutional standing. This is principally because he has failed to allege any particularized concrete injury resultant of his quarantine. Doing so is certainly a tall order given that prisoners—by virtue of their incarceration—are already severely restricted in their associations and activities—i.e., essentially quarantined from society. This pleading difficulty is further compounded by the broad application of restrictions such as quarantines that the general public has endured during the continuing national health emergency. Such restrictions have been burdens faced by most citizens. *See, e.g., Parker v. Wolf*, 506 F. Supp.3d 271, 282-83 (M.D. Pa. 2020). This generality distinguishes Sledge's case from those where the imposition of a COVID quarantine was found to have satisfied the injury-in-fact requirement. For example, in *Minnesota Voters Alliance v. Walz*, 492 F. Supp. 3d 822, 830 (D. Minn. 2020), the court found the plaintiff's allegation that a state-wide quarantine prevented them from engaging in political activity in indoor public settings to be an injury sufficient to establish standing. And in *W.O. v. Beshear*, 459 F. Supp. 3d, 833 (E.D. Ky. 2020), the Court found plaintiffs' allegation that a state-wide quarantine that prevented them from interstate travel stated a sufficient injury for purposes of constitutional standing. *Id.* at 840. But here, Sledge has not alleged any material burden or

11

restriction imposed on him because of his quarantine that was outside those normally associated with incarceration. Thus, his general reference to having been placed in quarantine does not support the type of particularized concrete injury necessary to support Article III standing.

4.   Conclusion

The claim against the Erie County Prison will be dismissed, with prejudice. Because Sledge had not alleged an "actual injury," this Court "is powerless to create its own jurisdiction by embellishing deficient allegations of standing." *See id.* at 155; *see also Crocamo v. Hudson Cty. Corr. Ctr.*, 2007 WL 1175753, at *7 (D.N.J. Apr. 19, 2007). Therefore, the motion to dismiss the Amended Complaint as to all Defendant will be **GRANTED**.

5.   Leave to Amend

When dismissing a civil rights complaint, "a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). As it is possible that Sledge be able to allege additional facts that may establish standing, the claims against Defendants Sutter, Holman, Carmen, Bolt, Hill, and Barrett will be dismissed, without prejudice. Sledge will be granted twenty days to file a second amended complaint. His failure to do so, however, will result in dismissal of this action with prejudice.

A separate Order follows.

Submitted this 29th day of October, 2021.

/s/ Richard A. Lanzillo
HON. RICHARD A. LANZILLO
United States Magistrate Judge