IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| LARRY ALLEN SLEDGE, | ) |
| | ) |
| Plaintiff | ) 1:20-CV-00336-RAL |
| | ) |
| vs. | ) RICHARD A. LANZILLO |
| | ) UNITED STATES MAGISTRATE JUDGE |
| CAPTAIN SHAWN BOLT, ERIE COUNTY PRISON; MITCH CARMEN, DEPUTY WARDEN MICHAEL HOLMAN, ALL STAFF OF ERIE COUNTY PRISON; WARDEN KEVIN SUTTER, JOSHUA HILL, PETER BARRETT, | ) ECF NO. 37 |
| | ) |
| Defendants | ) |

MEMORANDUM OPINION

This case comes before the Court on Defendants' motion to dismiss Plaintiff's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 37). For the reasons discussed herein, Defendants' motion will be GRANTED.

I.   **Background and Procedural Posture**

Plaintiff Larry Allen Sledge ("Sledge") commenced this civil rights action pursuant to 42 U.S.C. § 1983 against defendants Captain Shawn Bolt ("Bolt"), Captain Mitch Carmen ("Carmen"), Deputy Warden Michael Holman ("Holman"), Warden Kevin Sutter ("Sutter"), Correctional Officer Joshua Hill ("Hill"), and Correctional Officer Peter Barrett ("Barrett") (collectively "Defendants").[1] Defendants moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss

---

[1] All claims against the Erie County Prison were dismissed with prejudice pursuant to the Court's Memorandum Opinion and Order dated October 29, 2021. *See* ECF No. 31, 32.

1

Sledge's initial complaint (ECF No. 5), which he labeled "Amended Complaint." *See* ECF No. 20. The Court granted Defendants' motion and dismissed Sledge's Amended Complaint. *See* ECF No. 31. The Court found, however, that Sledge could potentially cure defects in his claims with additional factual allegations and therefore granted him leave to file an amended pleading. *See id.*

Sledge filed a Second Amended Complaint (ECF No. 34), which Defendants again moved to dismiss. *See* ECF Nos. 37, 38. Thereafter, Sledge filed a Third Amended Complaint (ECF No. 41), which the Court construes as a Supplement to his Second Amended Complaint, a Response to Defendants' motion to dismiss (ECF No. 42), and an Affidavit in Support of his Third Amended Complaint (ECF No. 43). Defendants' pending motion challenges the legal sufficiency of Sledge's Second Amended Complaint, but the Court will construe it as also challenging the legal sufficiency of Sledge's Supplement to the Second Amended Complaint (which Sledge labels, "Third Amended Complaint) and any additional facts asserted in his Affidavit. To avoid confusion, the Court will refer to these pleadings collectively as the "Amended Complaint" and include specific citations to each as appropriate. Defendants' motion is ripe for decision. All parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). ECF Nos. 3, 27.

## II.     Material Facts

The Amended Complaint alleges the following facts, which the Court accepts as true for purposes of Defendants' motion. Sledge is an inmate housed at the Erie County Prison ("ECP"). On November 5, 2020, Defendants Bolt, Carmen, Hill, and Barrett escorted Sledge to a cell in the Restricted Housing Unit ("RHU") to be housed with a cellmate, Johnathan Klaes ("Klaes"), who had not completed a 14-day COVID-19 quarantine. Despite Sledge's protests, he was

placed in the cell with Klaes. *See* ECF No. 34, p. 3. Klaes had been placed on a new 14-day quarantine for having "symptoms." Klaes was later diagnosed with influenza and mild bronchitis. *See id.* at 3-4.

Six days later, on November 11, 2020, Sledge began having chest pain and breathing trouble. Because of these symptoms Sledge was put on extended quarantine. *See id.* at 4. He was prescribed breathing treatments for a mild bronchial infection, which he is certain he contracted from his exposure to Klaes. *See id.* at 4-5. On November 17, 2021, Sledge was transferred to St. Vincent Health Center due to his chest pains and breathing issues. *See id.* He was diagnosed with panic attacks and a possible mild stroke. *See id.*

Sledge learned that inmates at ECP were contracting the COVID-19 virus from inmates who were housed among the general population while they were supposed to be in a quarantine period. *See id.* Sledge emphasizes that unvaccinated inmates were at risk of exposure to COVID-19 because of the airborne nature of the virus. *See id.* at 5. Sledge claims he feared contracting COVID-19 until April 28, 2021, when he was vaccinated. *See id.*

Unlike his initial pleading, Sledge's "Second Amended Complaint" does not include a request for monetary damages.[2] Instead, his prayer for relief requests:

> A preliminary and permanent injunction ordering defendants Kevin Sutter, Warden and Michael Holman, Deputy Warden to housed [sic] all quarantining inmates away from all inmates who have completed there [sic] quarantine period to avoid the risk of breathing in any airborne germs that may possibly be contracted by a quarantined unvaccinated inmate at this institution. By only surrounding quarantined inmates around vaccinated and other quarantined inmates eliminates the crosstamination [sic] of the prison population and ensures inmates safety from contracting Covid-19 at this institution.

---

[2] The (First) Amended Complaint requested declaratory relief, compensatory damages in the amount of $250,000 against each defendant, jointly and severally, and punitive damages in the amount of $250,000 against each defendant, jointly and severally. *See* ECF No. 5, p. 4-5.

3

ECF No. 34, pp. 6-7.

Sledge's "Third Amended Complaint" adds that although he was vaccinated for COVID-19 on April 28, 2021, he is still at risk of contracting the virus because vaccinated inmates are still testing positive for COVID-19 and Defendants have not limited this risk by separating quarantined individuals from the general population. *See* ECF No. 41, p. 3. As relief, this pleading requests an "[i]njunction to keep unquarantined/unvaccinated inmates away from quarantined/vaccinated inmates to ensure safety. $250,000 money damages (punitive)." ECF No. 41, p. 3. VI. Therefore, once again, Sledge seeks injunctive relief *and* monetary damages. Sledge's Response to Defendants' motion to dismiss also makes clear that he "still requests money damages from the Defendants." ECF No. 43, p. 2. And he more succinctly states his claim that he contracted "a mild bronchial infection from the inmate [Klaes] all because of the actions of the Defendants which was improper procedure ... and because Defendants failed to follow COVID-19 procedure." ECF No. 42, p. 2-3.

Notably, in the "Third Amended Complaint," Sledge also adds that he has congestive heart failure[3] and that the Defendants were deliberately indifferent to that serious medical condition by putting him as risk of contracting COVID-19. *See* ECF No. 42, p. 3. Finally, in his Affidavit filed on January 20, 2022, Sledge reports that he tested positive for COVID-19 on January 16, 2022. *See* ECF No. 43, p. 1. He renews his claims that the prison is medically unsafe and broadly alleges that the prison "has been dealing with an ongoing surge of positive tested COVID-19 inmates due to staff not wearing masks and quarantining untested inmates on a fully quarantined inmate population." ECF No. 43, p. 1. These supplemental pleadings do not,

---

[3] "The Plaintiff has a [ ] heart monitor inserted into his chest connected to his heart and takes Carvedilol 25mg 2x per day as well as Lisenopril 30mg 1x per day to keep his blood pressure at a moderate level to treat his condition." ECF No. 43, p. 1.

4

however, allege any personal involvement of any named Defendant in events, acts, or omissions after Sledge was placed in the cell with inmate Klaes. His claims against Warden Sutter and Deputy Warden Holman appear to be based exclusively on their supervisory roles at the ECP.

To summarize, Sledge asserts that the lack of COVID-19 safety protocols at the ECP caused him to become ill on two occasions. The first occurred after Defendants Bolt, Carmen, Hill, and Barrett placed him in a cell with a quarantined individual who, although not positive for COVID-19, was suffering from bronchitis. Sledge asserts that as a result of this exposure he contracted bronchitis and needed treatment for labored breathing and chest pain. Sledge also claims he was diagnosed with panic attacks and a mild stroke. Although the facts alleged in Sledge's pleadings support a plausible inference that his breathing issues and chest pain are related to bronchitis he contracted from Klaes, they do not support a plausible relationship between Sledge's bronchitis and his panic attacks or mild stroke.

Second, Sledge asserts he later contracted COVID-19 while in the general prison population due to lax transmission mitigation practices at ECP. However, he does not allege facts to support an inference that any named Defendant was responsible for these practices or the conditions that led to his infection. He vaguely alleges that the prison failed to follow appropriate COVID-19 safety protocols, but he does not allege facts concerning the involvement, if any, of any Defendant in these practices. Thus, the Court can only construe Sledge's pleadings as asserting claims against Warden Sutter and Deputy Warden Holman under a theory of respondeat superior.

### III. Standard and Scope of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In

5

deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555. *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Finally, because Sledge is representing himself, the allegations in the Complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read a *pro se* litigant's allegation of fact to state a valid claim upon which relief can be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"). But "any pleading must still contain sufficient factual allegations that, when accepted as true, 'state a claim to relief that is plausible on its face.'" *Heffley v. Steele*, 2019 WL 5092127, at *4 (W.D. Pa. Oct. 11, 2019), *aff'd*, 826 Fed. Appx. 227 (3d Cir. 2020) (citations omitted). *See also Baez v. Mooney*, 2021 WL 816013, at *3 (W.D. Pa. Feb. 8, 2021), *report and recommendation adopted*, 2021 WL 808726 (W.D. Pa. Mar. 3, 2021).

## IV. Discussion and Analysis

Sledge asserts violations of his Eighth and Fourteenth Amendment rights and requests injunctive and monetary relief. He claims and that he was treated with deliberate indifference to his serious medical condition and subjected to cruel and unusual punishment due to unsafe prison conditions arising from ECP's failure to follow appropriate COVID-19 quarantine protocols.

Defendants raise two arguments in support of dismissal of this action. First, they argue that Sledge has failed to allege facts to support the elements of his claim for injunctive relief.[4] Second, Defendants argue that Sledge's Eighth Amendment claim fails because he has not alleged facts sufficient to support a plausible inference that any defendant acted with deliberate indifference to his medical needs or safety. Sledge asserts both his Eighth Amendment and Fourteenth Amendment claims pursuant to 42 U.S.C. § 1983.

Section 1983 "provides a cause of action against state actors who violate an individual's rights under federal law." *Filarsky v. Delia*, 566 U.S. 377, 380 (2012). Section 1983 does not create substantive rights but instead "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). A plaintiff must plead a defendant's personal involvement in the alleged deprivation of his constitutional rights. *See, e.g., Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). That is because, as stated in the text of § 1983 itself, only a person who "subjects, or

---

[4] Defendants filed their motion prior to Sledge's filing of his Third Amended Complaint and Affidavit, which resurrected his request for monetary damages. Sledge's Second Amended Complaint appeared to request only equitable relief.

causes to be subjected" another person to a civil rights violation can be held liable under § 1983. Thus, each defendant is liable only for his or her own conduct. *See, e.g., id.*; *see also Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Barkes v. First Correctional Medical*, 766 F.3d 307, 316 (3d Cir. 2014) (*rev'd sub. nom. on other grounds* 575 U.S. 822 (2015)); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005) ("To impose liability on the individual defendants, Plaintiffs must show that each one individually participated in the alleged constitutional violation or approved of it.") (citing *C.H. v. Oliva*, 226 F.3d 198, 201-02 (3d Cir. 2000) (*en banc*)).

The doctrine of respondeat superior, which makes an employer automatically responsible for the wrongdoing of its employees, does not apply under § 1983. *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see, e.g., Rode*, 845 F.2d at 1207. For that reason, supervisor-defendants cannot be held liable for every illegal act that takes place in a prison. Rather, they are only liable for their own conduct. "Therefore, it is incumbent upon a plaintiff to describe who he seeks to sue, and what these parties did that violated the plaintiff's rights. When a plaintiff fails in this basic responsibility, it is the duty of the court to dismiss his claims." *Rosa-Diaz v. Harry*, No. 1:16-CV-2303, 2017 WL 1316946, at *5 (M.D. Pa. Feb. 2, 2017), *report and recommendation adopted,* No. 1:16-CV-2303, 2017 WL 1283771 (M.D. Pa. Apr. 6, 2017).

### A. Eighth Amendment Claim

Sledge alleges that Bolt, Carmen, Hill, and Barrett acted with deliberate indifference to his safety and serious medical need in violation of the Eighth Amendment when they delivered him to a cell occupied by inmate Klaes who had not completed a 14-day COVID-19 quarantine.

9

Sledge alleges, "I explained concerns about being celled with this inmate because of his extended quarantine period. However, I was still forced into his cell by Captain Mitch Carmen." ECF No. 34, p. 4. This is the extent of Sledge's allegations of personal involvement of the Defendants in the actions underlying his claims. The Court will first consider whether these alleged actions support a claim of deliberate indifference against Defendants.

Two requirements must be met to establish a violation of the Eighth Amendment: First, the deprivation of rights alleged must be, objectively, "sufficiently serious," and second, a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted). To satisfy the second prong of the test, a prison official must have a "sufficiently culpable state of mind." *Id.* (citations omitted). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* "A prison official may be held liable under the Eighth Amendment for acting with 'deliberate indifference' to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 825.

As it relates to Sledge's placement in the cell with Klaes, the Amended Complaint fails to state an Eighth Amendment claim that is plausible on its face. As a threshold matter, Sledge has not alleged any facts that would support a finding that any Defendant deprived him of a constitutional right. The substance of his claim is that his transfer to a cell with a quarantined inmate was not according to COVID-19 protocols and represented a medically unsafe practice. "We recognize that the prison setting raises unique concerns regarding the spread of the COVID-19 virus since, by their very nature, prisons are confined spaces unsuited for social distancing. But the inability to practice effective social distancing is not, in and of itself,

sufficiently serious to implicate a violation of the Eighth Amendment." *Rodriguez-Francisco v. White*, No. 1:20-CV-1076, 2020 WL 4260766, at *3 (M.D. Pa. July 24, 2020) (quoting *Verma*, 2020 WL 1814149, at *4; *see also Engelund v. Doll*, 4:20-CV-604, 2020 WL 1974389, at *9 (M.D. Pa. Apr. 4, 2020)). While Sledge alleges that prison employees DeFranco and Tarasovich told him that he was mistakenly placed in the cell with Klaes, *see* ECF No. 5, p. 3, he does not allege any facts to support a conclusion that the conduct of these or the other Defendants was deliberately indifferent to his health or safety. Beyond Sledge's general objection to being placed in a cell with Klaes, the facts alleged do not support an inference that Bolt, Hill, Barrett, or even Carmen knew or should have known that this cell assignment presented an unreasonable risk of harm to him. In other words, Sledge's allegations do not support that any Defendant acted with a culpable state of mind when he was placed in a cell with Klaes. Sledge also alleges no involvement on the part of these Defendants in the events that allegedly led to his later contracting COVID-19.

In his Response and Affidavit, Sledge adds that he is at "high risk" for COVID-19 complications because he suffers from congestive heart failure. Even if this condition placed Sledge at a greater risk of harm if he were to contract a COVID-19 infection, he does not allege facts to support that any Defendant was aware of this condition when they placed him in the cell with Klaes. Thus, Sledge has not pleaded facts to support an inference that any of the guards knowingly exposed Sledge to an unreasonable risk to his health. While quarantining inmates who have any symptoms of a COVID-19 is one of the mitigation precautions frequently maintained in prisons, it does not follow that a single deviation from this precautionary measure gives rise to an Eighth Amendment claim. *See Windom v. Wetzel*, 2022 WL 780669, at *4 (M.D. Pa. Mar. 14, 2022) ("a violation of an internal prison policy does not automatically rise to the

11

level of a constitutional violation"). Accordingly, Sledge's Eighth Amendment claim against Bolt, Hill, Barrett, and Carmen will be dismissed.

Although named as Defendants, Sutter and Holman are not alleged to have had any personal involvement in the conduct that led to either Sledge's bronchitis or his COVID-19 exposure. Rather, Sledge appears to sue these Defendants based on their supervisory roles within the prison and an alleged systemic breakdown in the way ECP handled quarantined inmates. The Court of Appeals has identified two general ways in which a supervisor-defendant may be liable for alleged unconstitutional acts undertaken by subordinates. First, liability may attach if the supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190 (3d Cir. 1995)). "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1208.

Sledge alleges no facts to support that Sutter or Holman participated in his placement in the cell with Klaes or had knowledge of and acquiesced in any practices that resulted in harm Sledge. Sledge has not alleged facts to support an inference that Sutter or Holman established a policy, practice, or custom that directly caused the harms that he allegedly endured. *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Nor did Sledge plead facts sufficient to infer that Sutter or Holman participated in, directed, or had knowledge of

(and acquiesced to) any alleged constitutional violations. *See Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995). Absent such allegations, Sledge's Amended Complaint fails to state an Eighth Amendment claim against Sutter and Holman. *See Phillips v. Northampton County*, 687 Fed. Appx. 129, 131–32 (3d Cir. 2017). This claim will be dismissed.[5]

### B. Fourteenth Amendment Claim

To the extent Sledge asserts a Fourteenth Amendment substantive due process claim, it must be dismissed pursuant to the "more-specific-provision rule," which holds that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *see also Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260-61 (3d Cir. 2010). Because Sledge's deliberate indifference to safety and medical needs claim falls within the rubric of the Eighth Amendment, he cannot bring a parallel claim under the Fourteenth Amendment's protection of substantive due process. *See Wharton v. Danberg*, 854 F.3d 234, 246 (3d Cir. 2017).

This claim fares no better under a procedural due process analysis. To state a Fourteenth Amendment due process claim, the plaintiff must allege facts to support the following elements: (1) the plaintiff was deprived of a protected liberty or property interest; (2) this deprivation was without due process; (3) the defendant subjected him to this deprivation; (4) the defendant was acting under color of state law; and (5) the plaintiff suffered injury as a result. *Goodwine v.*

---

[5] To the extent that Sledge may be raising a failure to protect claim based on the risks associated with COVID, it is also without merit based on the absence of allegations of fact to support an inference of deliberate indifference.

*Keller*, 2012 WL 4482793 at *9 (W.D. Pa. 2012) (citing *Sample v. Diecks*, 885 F.2d 1099, 1113 (3d Cir. 1989)). "The due process analysis starts with determining whether the liberty interest asserted is one that is protected by the Fourteenth Amendment." *See Montanez v. Sec'y Dep't of Corr.*, 2014 WL 5155040, at *6, 773 F.3d 472, 482–83 (3d Cir. Aug. 15, 2014). "If it is a protected interest, we must then determine what process is necessary to protect it. If the interest is not protected, no process is necessary." *Stephens v. Canino*, 71 F. Supp. 3d 510, 513 (E.D. Pa. 2014) (citations omitted). The Court of Appeals has explained:

> A prisoner may be deprived of a liberty interest in violation of the Constitution in two ways: (1) when severe changes in conditions of confinement amount to a grievous loss that should not be imposed without the opportunity for notice and an adequate hearing, [*Vitek v. Jones*, 445 U.S. 480, 488 (1980)] and (2) when state statutes and regulations create a liberty interest in freedom from restraint that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life[,]" thereby triggering due process protection, *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *see also Meachum v. Fano*, 427 U.S. 215, 223-27, 96 S. Ct. 2532, 49 L. Ed.2d 451 (1976). The first is the so-called independent due process liberty interest, while the latter is the so-called state-created liberty interest.

*Renchenski v. Williams*, 622 F.3d 315, 325 (3d Cir. 2010); *Stephens v. Canino*, 71 F. Supp. 3d 510, 514-16 (E.D. Pa. 2014).

Thus, in determining whether Sledge's due process rights have been violated, the Court must first consider whether he has adequately pleaded a denial of a liberty interest. Only if he makes such a showing is it necessary for the Court to evaluate "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989).

Sledge claims that because he has been inappropriately exposed to illness at ECP, he has been denied due process. He has not, however, identified any liberty or property interest associated with his exposure. The absence of such an interest ends the procedural due process

14

analysis. *See Oberheim v. Bason*, 2021 WL 4478333, at *6 (M.D. Pa. Sept. 30, 2021) (no liberty or property interest implicated by school district's mask mandate and other COVID-19 precautions). A liberty interest in COVID-19 precautions exists only if an applicable law or regulation mandates those precautions for the protection of prisoners such as Sledge. Sledge has identified no such mandate, nor has the Court's own research. Sledge's due process claim will be dismissed.

### C. Injunctive Relief

When Defendants filed their instant motion, Sledge's "Second Amended Complaint" was the sole operative pleading and appeared to be seeking only injunctive relief. Accordingly, Defendants' primary argument for dismissing Sledge's claims was its insufficiency to support such relief. Sledge later clarified that he was seeking both money damages and injunctive relief. The Court's discussion above disposes of Sledge's claims for damages. The absence of a viable constitutional claim also negates any right to equitable relief.

Sledge seeks an injunction prohibiting Defendants from housing inmates who are quarantining due to exposure to COVID-19 with other inmates who are at-risk candidates for contracting the disease. To obtain an injunction, Sledge must demonstrate: "(1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citations omitted). Other courts have noted that the plaintiff must also show a "likelihood of success on the merits" where a temporary restraining order or preliminary injunction is requested, and "actual success on the merits" where a permanent injunction is

sought. *Harper v. Corizon*, 2015 WL 158798, at *3 (E.D. Pa. Jan. 12, 2015) (citing *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir.2001)). Furthermore, the Prison Litigation Reform Act, as codified at 18 U.S.C. § 3626(a)(1)(A), prohibits the award in a prison civil rights action of any "prospective relief" which is not "necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." The PLRA defines prospective relief as "all relief other than compensatory money damages." 18 U.S.C. § 3626(g)(7):

Because Sledge has failed to allege facts sufficient to support a constitutional claim against the Defendants, he has demonstrated neither actual success nor a likelihood of success on the merits of his claims. And beyond his general apprehension of contracting another COVID-19 infection despite his having been vaccinated, he offers no support for a finding that he has suffered, or faces an imminent threat of, irreparable harm if an injunction is not granted. Therefore, Sledge's claim for injunctive relief also will be dismissed.

## V.     Amendment

Having determined that the Amended Complaint fails to state a claim against the Defendants, the Court must now determine whether further amendment would be futile. *See Hockenberry v. SCI Cambridge Springs*, 2019 WL 2270345, at *3 (W.D. Pa. May 28, 2019) (stating "[t]he U.S. Court of Appeals for Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile").

Sledge has had multiple opportunities to amend and allege facts sufficient to state a cause of action. He has now filed three complaints, a response to the instant motion, and an affidavit raising factual assertions. Despite this, he has been unable to allege facts sufficient to support his Eighth and Fourteenth Amendment claims against the Defendants. Based on this procedural

16

history and the fundamental deficiencies of Sledge's allegations, the Court finds that any further amendment would be futile.

**VI.     Conclusion**

For the foregoing reasons, the Defendants' Motion to Dismiss (ECF. No 37) Plaintiffs' Second Amended Complaint will be GRANTED, and all claims in this action will be dismissed with prejudice.

A separate Order follows this Memorandum.

DATED this 31st day of March, 2022.

BY THE COURT:

_____
RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE